1  BORIS FELDMAN, Boris.Feldman@wsgr.com, State Bar No. 128838
   LEO P. CUNNINGHAM, lcunningham@wsgr.com, State Bar No. 121605
2  MEREDITH E. KOTLER, mkotler@wsgr.com, (application for *pro hac vice* admission pending)
   JACK I. SIEGAL, jsiegal@wsgr.com, State Bar No. 218088
3  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
4  650 Page Mill Road
   Palo Alto, CA 94304-1050
5  Telephone:  (650) 493-9300
   Facsimile:   (650) 565-5100
6
   Attorneys for Defendants
7  SYNOPSYS, INC., AART DE GEUS,
   STEVEN K. SHEVICK, and
8  VICKI ANDREWS

9                              UNITED STATES DISTRICT COURT

10                            NORTHERN DISTRICT OF CALIFORNIA

11
    THE WU GROUP, et al.,                )   CASE NO.:  C-04-3580-MJJ
12                                        )
               Plaintiff,                 )
13                                        )   NOTICE OF MOTION AND MOTION
         v.                               )   FOR SANCTIONS; SUPPORTING
14                                        )   MEMORANDUM OF POINTS AND
    SYNOPSYS, INC., AART DE GEUS, STEVEN  )   AUTHORITIES
15  K. SHEVICK, and RICHARD T. ROWLEY,    )
                                          )
16             Defendants.                )   DATE: June 28, 2005
                                          )   TIME:  9:00 a.m.
17                                        )   JUDGE:  Hon. Martin J. Jenkins
                                          )

C:\NrPortbl\PALIB1\SJR\2612902_1.DOC

MOTION FOR SANCTIONS
CASE NO.:  C-04-3580-MJJ

## TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................................ 1

ISSUE TO BE DECIDED ...................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................................... 1

PROCEDURAL AND FACTUAL BACKGROUND ........................................................................... 2

I.   PLAINTIFFS' COMPLAINT ....................................................................................................... 2

II.  THE FALSE ATTRIBUTIONS AND FALSE ALLEGATIONS IN THE CAC ............... 4

    A.   Supervisor:  Pazetta Jones-Allen ............................................................................ 4

    B.   SA 1:  Beverly Carlson ........................................................................................... 6

    C.   SA 2:  Diane Moreland ........................................................................................... 8

ARGUMENT ........................................................................................................................................ 10

I.   THE INCLUSION OF NUMEROUS FALSE ATTRIBUTIONS AND FALSE
     ALLEGATIONS IN THE CAC VIOLATES RULE 11 ..................................................... 10

II.  SANCTIONS ARE WARRANTED TO DETER THE FILING OF COMPLAINTS
     BASED ON FALSE ATTRIBUTIONS AND FALSE ALLEGATIONS ........................ 13

CONCLUSION ..................................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337 (9th Cir. 1995)..................14

*Avirgan v. Hull*, 932 F.2d 1572 (11th Cir. 1991) ...........................................................................11

*Balfour Guthrie, Inc. v. Hunter Marine Transport, Inc.*, 118 F.R.D. 66 (M.D. Tenn.
    1987).................................................................................................................................12

*Combs v. Rockwell Int'l Corp.*, 927 F.2d 486 (9th Cir. 1991) .......................................................14

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) ...............................................................10

*Estate of Blue v. County of Los Angeles*, 120 F.3d 982 (9th Cir. 1997) .......................................10

*Greebel v. FTP Software, Inc.*, 182 F.R.D. 370 (D. Mass. 1998), *aff'd*, 194 F.3d
    185 (1st Cir. 1999) ...........................................................................................................14

*In re Akros Installations, Inc.*, 834 F.2d 1526 (9th Cir. 1987)......................................................13

*Kramer v. Tribe*, 156 F.R.D. 96 (D.N.J. 1994) *aff'd*, 52 F.3d 315 (3d Cir. 1995)........................14

*Levine v. FDIC*, 2 F.3d 476 (2nd Cir. 1993) .................................................................................12

*Mercury Service, Inc. v. Allied Bank of Texas*, 117 F.R.D. 147 (C.D. Cal. 1987),
    *aff'd*, 907 F.2d 154 (9th Cir. 1990) ................................................................................13

*Methode Electronics v. Adam Technologies, Inc.*, No. 03 C 2971, 2003 WL
    21799934 (N.D. Ill. July 25, 2003), *aff'd*, 371 F.3d 923 (7th Cir. 2004)..........................11

*Navarro-Ayala v. Nunez*, 968 F.2d 1421 (1st Cir. 1992) ...............................................................11

*Peerless Indus. Paint Coatings, Co. v. Canam Steel Corp.*, 979 F.2d 685
    (8th Cir. 1992).................................................................................................................11

*Religious Technology Center v. Gerbode*, No. CV 93-2226 AWT, 1994 WL
    228607 (C.D. Cal. May 2, 1994).....................................................................................10

*Schrag v. Dinges*, 73 F.3d 374 (Table), 1995 WL 675475 (10th Cir. Nov. 14, 1995) .................11

*SG Cowen Sec. Corp. v. United States Dist. Ct. for the N. Dist. Cal.*, 189 F.3d 909
    (9th Cir. 1999).................................................................................................................14

*Sun World, Inc. v. Lizarazu Olivarria*, 144 F.R.D. 384 (E.D. Cal. 1992).....................................14

*Truesdell v. S. Cal. Permanente Medical Group*, 209 F.R.D. 169 (C.D. Cal. 2002)........10, 11, 13

*Truesdell v. S. Cal. Permanente Medical Group*, 293 F.3d 1146 (9th Cir. 2002) ........................11

*Wang v. Gordon*, 715 F.2d 1187 (7th Cir. 1983) .........................................................................13

*Zatko v. Rowland*,
    835 F. Supp. 1174 (N.D. Cal. 1993) ............................................................................... 12

**Rules**

Fed. R. Civ. P. 11 ................................................................................................... 1, 10, 13, 14

**Statutes**

15 U.S.C. § 78u-4(c)(2) ................................................................................................... 13

**Miscellaneous**

H.R. CONF. REP. NO. 104-369 (Nov. 28, 1995), *reprinted at* 1995 U.S.C.C.A.N.
    730 ...................................................................................................................... 14

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on June 28, 2005, at 9:00 a.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Martin J. Jenkins, United States District Court, 450 Golden Gate Ave., San Francisco, California, defendants Synopsys, Inc. ("Synopsys" or the "Company"), Aart J. de Geus, Steven K. Shevick, and Vicki L. Andrews, will and hereby do move the Court for an Order issuing sanctions against plaintiffs and their counsel, pursuant to Rule 11 of the Federal Rules of Civil Procedure. This Motion is based on this Notice and Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Jack I. Siegal, together with accompanying exhibits; the [Proposed] Order; all pleadings and papers filed herein; oral argument of counsel; and any other matter that may be submitted at the hearing.

**ISSUE TO BE DECIDED**

Whether sanctions against plaintiffs and their counsel are appropriate in light of their submission and filing of an amended complaint that is based on false attributions and false allegations, where the three persons alleged to have made the statements supporting plaintiffs' claims have denied, under penalty of perjury, that they made the statements attributed to them.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION AND SUMMARY OF ARGUMENT**

As lead and liaison counsel, Schiffrin & Barroway, LLP and Green Welling LLP submitted and filed with the Court a Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (the "CAC") on behalf of the plaintiffs, the Wu Group ("plaintiffs"), in this action. By doing so, counsel certified that "to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the allegations and other factual contentions [in the complaint] have evidentiary support." Fed. R. Civ. P. 11(b)(3) ("Rule 11").

Unfortunately, the Complaint is rife with statements attributed to three purported "well-placed" sources who, under oath, flatly deny making them. For example, the CAC alleges that two different sources stated that their supervisors complained about alleged inflation of sales projections. Both sources, however, have sworn – under penalty of perjury – that they never

-1-

made such statements. (Indeed, the sources have sworn that, to their knowledge, no such complaints were made). These false attributions, and others like them in the CAC, constitute a clear violation of Rule 11.

Because of this violation, plaintiffs and their counsel are subject to sanctions. In order to deter plaintiffs, their counsel, and others from engaging in similar conduct, dismissal of the CAC without leave to amend is warranted.

## PROCEDURAL AND FACTUAL BACKGROUND

### I. PLAINTIFFS' COMPLAINT

Synopsys provides electronic design automation ("EDA") software for the design of complex integrated circuits and systems-on-chips. CAC ¶ 2. Synopsys is a world leader in the EDA industry, and sells its products to semiconductor, computer, communications, consumer electronics, and other companies that develop electronic products. Defendant Aart J. de Geus is the CEO, President, and Chairman of the Board of Directors of Synopsys. *Id.* at ¶ 18. Defendant Steven K. Shevick is the Senior Vice President, Finance and CFO of Synopsys. *Id.* at ¶ 19. Defendant Vicki L. Andrews is the Senior Vice President, Worldwide Sales of Synopsys. *Id.* at 20.[1]

On August 25, 2004, Hemanth Kanekal filed this action on behalf of himself and others similarly situated, through his attorneys Green & Jigarjian LLP and Schiffrin & Barroway, LLP. The Class Action Complaint alleged violations of federal securities law based on allegedly false and misleading statements regarding, *inter alia*, Synopsys' financial forecasts for Q3 04 and FY 2004. Class Action Complaint, filed Aug. 25, 2004, at ¶¶ 25-38, 52-66. On October 25, 2004, plaintiffs, through the same attorneys, moved for appointment as lead plaintiff in this action. On November 24, 2004, the Court granted plaintiffs' motion, and approved the appointment of Schiffrin & Barroway, LLP as lead counsel and Green Welling LLP as liaison counsel.[2]

---

[1] The initial complaint filed in August 2004 named as defendants de Geus, Shevick, and Richard T. Rowley, Vice President, Corporate Controller and Treasurer of Synopsys. The CAC does not name Rowley as a defendant, but instead adds defendant Andrews. *See* CAC at p. 5.

[2] Per the Notice of Change of Firm Name filed on October 29, 2004, Green & Jigarjian LLP has changed its name to Green Welling LLP.

On January 24, 2005, plaintiffs filed their CAC, alleging violations of the Securities Exchange Act of 1934. CAC ¶¶ 99-105. The pleading was submitted and filed by Schiffrin & Barroway, LLP and Green Welling LLP. The gravamen of the CAC is that defendants issued false and misleading revenue and earnings projections for Q3 04, FY 2004, and FY 2005, despite their knowledge of certain information that rendered the projections unattainable. *Id.* at ¶¶ 3, 58-74. The CAC also alleges that defendants made false and misleading statements about their expected performance and the stability of their business model, again despite their knowledge of the same information. *Id.* at ¶¶ 59, 63, 66, 68, 71-72.

The CAC advances three theories behind plaintiff's claims. First, the CAC alleges that defendant Andrews and others had access to and reviewed a document – referred to as a spreadsheet (the "Spreadsheet") – that made it "obvious" that Synopsys could not meet its financial goals for Q3 04 and FY 2004. *Id.* at ¶¶ 36-43, 61, 64, 74. Second, the CAC alleges that certain practices at Synopsys (the Company's use of certain license models, its "unbundling" of software licenses, and its purported inflexibility on pricing) was angering customers and causing them to leave Synopsys beginning in late 2003. *Id.* at ¶¶ 44-50, 61, 64, 74. Third, the CAC alleges that Synopsys' financial projections were based on overly aggressive sales forecasts that defendant Andrews generated by consistently inflating the forecasts she received from her sales personnel. *Id.* at ¶¶ 51-57, 61, 64, 74.

In an effort to plead their claims with the heightened specificity required under the Private Securities Litigation Reform Act ("PSLRA"), critical allegations of the CAC are based on the purported statements of three individuals. *Id.* at ¶¶ 37-57. First, the CAC quotes and attributes statements to a former Supervisor (referred to as "Supervisor" in the CAC) of Synopsys' "Sales and Operations department," who worked for Synopsys from 1996 until September 2004. *Id.* at ¶ 37. Second, the CAC relies on the purported statements of a former sales support administrator (referred to as "SA 1" in the CAC), who was employed at Synopsys' Hillsboro, Oregon facility from 1997 through April 2004. *Id.* at ¶ 46. Third, the CAC quotes and attributes statements to a former sales support administrator (referred to as "SA 2" in the

1 CAC), who was employed at the Hillsboro facility from February 2000 through October 2004.

2 *Id*.

## II. THE FALSE ATTRIBUTIONS AND FALSE ALLEGATIONS IN THE CAC

As detailed below, the CAC is replete with false attributions and false allegations. Synopsys has identified the three sources on whose purported statements plaintiffs' claims are based. Each individual – in a sworn declaration – has denied making many of the statements attributed to her in the CAC. Indeed, collectively, the individuals have denied making all of the statements that directly support plaintiffs' fraud theories.[3]

### A. Supervisor: Pazetta Jones-Allen

The CAC attributes to Supervisor several statements about the defendants' purported knowledge that Synopsys would not achieve its Q3 04 and FY 2004 projections. CAC at ¶¶ 4, 37-43. In particular, the CAC alleges that Supervisor stated that a Spreadsheet she had created – which contained certain data regarding the Company's North America contracts – indicated that Synopsys had lost valuable contracts in 2003 and 2004. *Id.* at ¶ 43. According to the CAC, Supervisor stated that she had informed her bosses about concerns over material contract losses, but that "they made a choice to ignore me and the numbers." *Id.* The CAC further alleges that Supervisor stated that the Spreadsheet was repeatedly reviewed by senior management (including defendant Andrews), and that the Spreadsheet made it "obvious" that Synopsys could not possibly meet its financial goals for Q3 04 and FY 2004. *Id.*

Each of these attributions and assertions in the CAC is false. Pazetta Jones-Allen worked at Synopsys from 1996 through 2004, and at times held the titles of "Supervisor 1" and "Supervisor 2." Declaration of Pazetta Jones-Allen, executed Mar. 3, 2005 ("Jones-Allen Decl."), at ¶¶ 1-3 (annexed as Exhibit A to the Declaration of Jack I. Siegal, executed on Mar. 4, 2005 ("Siegal Decl.")). She has stated that, in or about November 2004, she spoke with a

---

[3] As described below, the individuals who have signed declarations also generally express disagreement with the statements they purportedly made. For purposes of this sanctions motion, the salient question is not whether the statements themselves are correct, but rather whether the declarants actually made them. Of course, to the extent that a declarant has sworn that she disagrees with a particular statement, that is even further evidence – beyond her sworn denial of having made the statement – that she did not make the statement.

-4- C:\NrPortbl\PALIB1\SJR\2612902_1.DOC

MOTION FOR SANCTIONS
CASE NO.: C-04-3580-MJJ

1 "consultant" acting on behalf of Synopsys shareholders who were suing the Company. *Id.* at ¶ 4.
2 Jones-Allen has reviewed the CAC, and believes that she is the person referred to as Supervisor.
3 *Id.* at ¶ 6.[4]

4 In her sworn declaration, Jones-Allen has flatly denied making each of the above
5 statements attributed to her. In particular, Jones-Allen has sworn that she did not tell plaintiffs'
6 consultant that the Spreadsheet indicated that Synopsys had lost any contracts. *Id.* at ¶ 21.
7 Indeed, according to Jones-Allen, the Spreadsheet did not so indicate. *Id.* Likewise, Jones-Allen
8 has denied telling plaintiffs' consultant that she informed anyone of her (non-existent) concerns
9 over contract losses, or that anyone at Synopsys "ignore[d]" her or "the numbers." *Id.* at ¶ 22.
10 Jones-Allen has further sworn that she did not tell plaintiffs' consultant that the Spreadsheet was
11 reviewed by anyone. *Id.* at ¶ 19. Rather, Jones-Allen has stated that she has no knowledge
12 whether defendant Andrews – or anyone else in senior management – reviewed the Spreadsheet.
13 *Id.* at ¶¶ 19, 34, 35.

14 Even more significantly, Jones-Allen has sworn that she did not tell plaintiffs' consultant
15 that the Spreadsheet made it "obvious" that Synopsys could not meet its financial goals for Q3
16 04 or FY 2004. *Id.* at ¶¶ 23, 35. According to Jones-Allen's sworn declaration, the Spreadsheet
17 simply did *not* indicate that the Company could not meet its projections. *Id.* at ¶ 23. To the
18 contrary, Jones-Allen has sworn that she told plaintiffs' consultant – several times – that, to her
19 knowledge, *everyone at the Company believed Synopsys would meet its financial projections*. *Id.*
20 at ¶¶ 5, 9, 35 (emphasis added).

21 The CAC also falsely attributes to Supervisor statements about customers allegedly
22 defecting from Synopsys. CAC ¶¶ 44-45, 49-50. The CAC alleges that Supervisor stated that
23 customers were "angry," frustrated, and confused by shifting licensing arrangements and
24 unbundling of licenses. *Id.* at ¶¶ 44-45, 49. According to the CAC, Supervisor stated that

---

[4] Synopsys is unaware of any other former employee who fits the description of Supervisor, given the title, dates of employment, and supervisory chain pleaded in the CAC. *See* CAC ¶¶ 37-38.

1  customers began "flocking" to competitors by late 2003 because of these problems, and that

2  Defendants were aware of the problems. *Id.* at ¶¶ 44-45, 50.

3        Again, Jones-Allen – under penalty of perjury – has denied making any of these

4  statements. Jones-Allen Decl. at ¶¶ 25, 26, 28, 30, 32. Indeed, Jones-Allen has stated that her

5  contact with Synopsys' clients was rare and limited, and that she never discussed with clients

6  shifting license arrangements or unbundling of licenses. *Id.* at ¶¶ 25, 28, 30. Jones-Allen has

7  also stated that she has no knowledge whether or how many customers left Synopsys. *Id.* at ¶

8  32.[5]

### B.   SA 1:  Beverly Carlson

10        The CAC attributes to SA 1 several statements about customers allegedly defecting from

11  Synopsys, and several statements about defendant Andrews' alleged inflation of sales projections

12  forwarded by her sales personnel. With respect to purported customer defections, the CAC

13  alleges that SA 1 stated that a purported "trend from upfront licenses to time-based licenses"

14  confused customers, that unbundling licenses "angered" customers, and that customers

15  consequently began "flocking" to competitors in late 2003. CAC ¶¶ 46, 49-50.

16        Again, these attributions and assertions in the CAC are simply false. Beverly Carlson

17  worked at Synopsys' Hillsboro facility from 1997 through 2004, first as a Sales Support

18  Administrator, then as a Senior Sales Support Administrator, and later as a Strategic Account

19  Maintenance Administrator. Declaration of Beverly Carlson, executed Feb. 18, 2005 ("Carlson

20  Decl."), at ¶¶ 1-4 (annexed as Exhibit B to the Siegal Decl.). Carlson has stated that, during the

21  Fall of 2004, she spoke with an investigator acting on behalf of certain Synopsys shareholders.

---

[5] Jones-Allen has also stated that the CAC contains other inaccuracies pertaining to her. For example, Jones-Allen has stated that she did not "lead" any department entitled "Sales and Operations Department." Jones Allen-Decl. at ¶ 10; *compare* CAC ¶ 37 (lines 10-11). There is no such department at Synopsys. She was a supervisor in North America Sales and Customer Support, which is in the "Sales Operations Department" of the Company's Worldwide Sales organization. Jones-Allen Decl. at ¶ 3. In addition, the Spreadsheet she created did not document "all data impacting the Company's revenue and earnings projections," "all data pertaining to North American contracts," or "licensing data, costs, . . . products, [or] projected revenue" for North America contracts." Jones-Allen Decl. at ¶ 17; *compare* CAC ¶ 4 (lines 12-13), 41 (lines 7-8). Moreover, contrary to the CAC's allegations, Supervisor was never "bombarded with" or asked questions in the vein of "When are we going to get the dollars?" or

1  *Id.* at ¶ 8. She has reviewed the CAC, and believes that she is the person referred to as SA 1. *Id.*
2  at ¶ 9.[6]

3        Like Jones-Allen, Carlson has flatly denied making each of the above statements
4  attributed to her. In her sworn declaration, Carlson has denied telling plaintiffs' investigator that
5  there was any "trend from upfront licenses to time-based licenses," or that this (non-existent)
6  trend confused customers. *Id.* at ¶ 14. Indeed, Carlson has sworn that there was no such trend,
7  and that customers were not so confused. *Id.* Likewise, Carlson has stated that she did not tell
8  plaintiffs' investigator that unbundling licenses "angered" customers. *Id.* at ¶ 17. To the
9  contrary, Carlson has sworn that she does not know of any Synopsys customers who left the
10 company because of unbundling. *Id.* Moreover, Carlson has denied telling plaintiffs'
11 investigator that customers began "flocking" to competitors, for any reason or at any time. *Id.* at
12 ¶ 19.

13       The CAC also falsely attributes to SA 1 statements about defendant Andrews' purported
14 inflation of sales projections. The CAC alleges that SA 1 stated that defendant Andrews created
15 "overly optimistic" internal forecasting reports that "did not accurately reflect," and were much
16 higher than, the projections that SA 1 and other sales representative had forwarded. CAC ¶ 54.
17 The CAC further alleges that SA 1 stated that her supervisor frequently confronted defendant
18 Andrews about the discrepancy between the sales personnel's numbers and Andrews' reports,
19 and that defendant Andrews was not receptive to the discussions. *Id.*

20       Carlson's sworn declaration demonstrates that these allegations are, again, simply false.
21 Carlson has denied telling plaintiffs' investigator that defendant Andrews' internal forecasting
22 reports were inaccurate, "overly optimistic," or inflated in any way. Carlson Decl. at ¶ 23. To
23 the contrary, Carlson has sworn that she was not even privy to the content of those internal
24 forecasting reports – and that, in any event, she does not believe that the reports were inaccurate

25 ―――――――――――――――――――
26 "[a]re we going to make or lose money?" Jones-Allen Decl. at ¶ 15; *compare* CAC ¶ 40. Such questioning is pure fabrication.
27    [6] Synopsys is unaware of any other former employee who fits the description of SA 1, given the title, dates of employment, location of employment, and supervisory chain pleaded in the
28 CAC. *See* CAC ¶ 46.

-7-        C:\NrPortbl\PALIB1\SJR\2612902_1.DOC
MOTION FOR SANCTIONS
CASE NO.: C-04-3580-MJJ

1  or inflated. *Id.* Likewise, Carlson has denied telling plaintiffs' investigator that her supervisor
2  ever confronted Andrews about discrepancies in sales figures. *Id.* at ¶ 24. Indeed, Carlson has
3  sworn that, to her knowledge, no such confrontations ever took place. *Id.*[7]

### C. SA 2: Diane Moreland

The CAC attributes to SA 2 similar statements about alleged customer defections and alleged inflation of sales projections. With respect to customer defections, the CAC alleges that SA 2 stated that Synopsys was indifferent to customers and customer defections, and that if a customer wanted to leave Synopsys for "lesser quality, that was fine" with the Company. CAC ¶ 47. The CAC also alleges that SA 2 stated that customers consequently began "flocking" to competitors in late 2003, and that senior management acknowledged its inflexibility toward customers and was "attempting to be more favorable to customers." *Id.* at ¶ 50.

Yet again, the CAC's allegations are manufactured. Diane Moreland worked at Synopsys' Hillsboro facility from 2000 through October 2004, first as a Customer Support Representative and then as a Sales Support Specialist. Declaration of Diane Moreland, executed Feb. 16, 2005 ("Moreland Decl."), at ¶¶ 1-2 (annexed as Exhibit C to the Siegal Decl.). Moreland has stated that, in late December 2004 or early January 2005, she spoke with an investigator acting on behalf of certain Synopsys shareholders. *Id.* at ¶ 7. She has reviewed the CAC, and believes that she is the individual referred to as SA 2. *Id.* at ¶ 9.[8]

Like Jones-Allen and Carlson, Moreland wholly denies making each of the above statements attributed to her. In her sworn declaration, Moreland has denied telling plaintiffs' investigator that the Company was indifferent to or inflexible with customers or customer defections. *Id.* at ¶¶ 15, 18. Indeed, Moreland does not believe that the Company was indifferent or inflexible. *Id.* at ¶¶ 15, 18, 21. Moreland has also sworn that she did not tell plaintiffs' investigator that customers ever "flocked" to competitors, for any reason or at any

---

[7] Like Jones-Allen, Carlson has also stated that the CAC contains other inaccuracies pertaining to her. For example, the CAC inaccurately describes her title and responsibilities. Carlson Decl. at ¶ 12. The CAC also contains several inaccuracies in its description of "unbundling" of licenses. *Id.* at ¶¶ 16-17.

[8] Synopsys is unaware of any other former employee who fits the description of SA 2, given the title, dates of employment, and supervisory chain pleaded in the CAC. *See* CAC ¶¶ 46, 57.

-8-

time. *Id.* at ¶ 20. To the contrary, Moreland has sworn that she told the investigator that while Synopsys sometimes lost customers to competitors, the Company also won customers from competitors – because Synopsys' product is so good. *Id.* at ¶ 20.

Moreland's sworn declaration also demonstrates that the CAC's allegations regarding alleged inflation of sales projections are false. The CAC alleges that SA 2 "confirmed" a practice of artificially inflating sales projections. CAC ¶ 55. According to the CAC, SA 2 stated that senior management's quarterly forecasting reports were "filled with mistakes," "very inaccurate and by unacceptable amounts," and wrong "[e]very quarter for four and a half years." *Id.* at ¶ 56. The CAC also alleges that SA 2 stated that her supervisor made oral and written complaints about the inflated projections. *Id.* at ¶ 57.

Under penalty of perjury, Moreland has wholly refuted these allegations. Moreland has sworn that she did not tell plaintiffs' investigator that there was any practice of artificially inflating sales projections. Moreland Decl. at ¶ 23. Indeed, she does not believe that senior management ever deliberately or artificially inflated projections and, to her knowledge, her own forecasting information was never artificially or improperly inflated. *Id.* Moreland has likewise sworn that she did not tell plaintiffs' investigator that senior management's quarterly forecasting reports were filled with mistakes or very inaccurate – much less wrong "[e]very quarter for four and a half years." *Id.* at ¶¶ 26-27. Finally, Moreland has flatly denied telling plaintiffs' investigator that her supervisor complained about inflated projections. *Id.* at ¶ 29. To the contrary, Moreland has no knowledge of any such complaints, and does not believe that any such complaints were ever made. *Id.*[9]

---

[9] Like Jones-Allen and Carlson, Moreland has also stated that the CAC contains other inaccuracies pertaining to her. For example, the CAC inaccurately describes Moreland's title and responsibilities. Moreland Decl. at ¶¶ 12, 24.

**ARGUMENT**

**I.   THE INCLUSION OF NUMEROUS FALSE ATTRIBUTIONS AND FALSE ALLEGATIONS IN THE CAC VIOLATES RULE 11**

Rule 11 provides, in relevant part:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney . . . is *certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, – . . . the allegations and other factual contentions have evidentiary support*.

Fed. R. Civ. P. 11(b)(3) (emphasis added). Sanctions may be imposed on any party, attorney, or law firm that has violated Rule 11(b) or is responsible for the violation. Fed. R. Civ. P. 11(c)(1)(A) ("Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees."); *see also* Rule 11 Advisory Committee Notes (1993) ("Since . . . a [sanctions] motion may be filed only if the offending paper is not withdrawn or corrected within 21 days after service of the motion, it is appropriate that the law firm ordinarily be viewed as jointly responsible under established principles of agency."); *Religious Technology Center v. Gerbode*, No. CV 93-2226 AWT, 1994 WL 228607, at **4-5 (C.D. Cal. May 2, 1994) (discussing imposition of sanctions against parties, law firms, and co-counsel).

As described by the Supreme Court, the "central purpose of Rule 11 is to deter baseless filings in District Court and thus . . . streamline the administration and procedure of the federal courts . . . . Although the Rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy . . . any interpretation must give effect to the Rule's central goal of deterrence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Designed for deterrence, the Rule is governed by an objective standard of reasonableness; no showing of subjective intent or bad faith is required. *Truesdell v. S. Cal. Permanente Medical Group*, 209 F.R.D. 169, 173-74 (C.D. Cal. 2002).

By requiring certification that a pleading's allegations and factual contentions have evidentiary support, Rule 11 imposes three related obligations on counsel. First, counsel must conduct a reasonable investigation into the factual allegations. *See generally Estate of Blue v.*

-10-

1  *County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997).  Second, counsel must act reasonably
2  in the face of the results of the investigation.  *See Schrag v. Dinges*, 73 F.3d 374 (Table), 1995
3  WL 675475, at *12 (10th Cir. Nov. 14, 1995); *see also id.* at *15 ("Rule 11 requires that an
4  attorney act reasonably based on the information he learns from a prefiling investigation into the
5  facts. . . .  If, after inquiry, the facts do not support the claims, counsel should not sign the
6  complaint.") (citations omitted); *Navarro-Ayala v. Nunez*, 968 F.2d 1421, 1426 (1st Cir. 1992)
7  ("The duty of reasonable inquiry perforce requires that the signer of a pleading act upon the
8  knowledge he acquires.").

9  　　　　Third – and axiomatically – counsel must not misrepresent the results of his investigation
10 to the Court.  Indeed, the law on this point is unmistakable:  filing a pleading containing false
11 allegations is sanctionable under Rule 11.  *See, e.g.*, *Truesdell v. S. Cal. Permanente Medical*
12 *Group*, 293 F.3d 1146, 1153-54 (9th Cir. 2002) (upholding sanctions against counsel under Rule
13 11 where complaint stated allegations that counsel "must have known were false" based on his
14 representation of another client); *Schrag,* 1995 WL 675475, at *13 (counsel's filing of amended
15 complaint containing allegations "that even a cursory reading of the management agreement [on
16 which the complaint was based] would show to be false" violated Rule 11); *Navarro-Ayala*, 968
17 F.2d at 1426 (defendant's signature on pleading "that he had reason to believe was both incorrect
18 and misleading" warranted imposition of sanctions under Rule 11); *Peerless Indus. Paint*
19 *Coatings, Co. v. Canam Steel Corp.*, 979 F.2d 685, 686-87 (8th Cir. 1992) (upholding Rule 11
20 sanctions against counsel where pleadings misstated known, relevant facts); *Avirgan v. Hull*, 932
21 F.2d 1572, 1581-82 (11th Cir. 1991) (upholding sanctions against counsel who filed affidavit
22 outlining purported testimony of 79 witnesses, where witnesses "later stated under oath that they
23 did not know [plaintiffs' counsel], had never spoken to him, or flatly denied the statements he
24 had attributed to them in his affidavit"); *Methode Electronics v. Adam Technologies, Inc.*, No. 03
25 C 2971, 2003 WL 21799934, at *11 (N.D. Ill. July 25, 2003), *aff'd,* 371 F.3d 923 (7th Cir. 2004)
26 (Rule 11 sanctions against counsel warranted where complaint contained false venue allegation
27 in effort to deceive court and litigate in convenient forum); *Truesdell*, 209 F.R.D. at 177
28 (imposition of Rule 11 sanctions against counsel "independently justified" by fact that counsel

-11-  C:\NrPortbl\PALIB1\SJR\2612902_1.DOC

filed complaint containing claim that he must have known was false, by virtue of his representation of another client); *Zatko v. Rowland*, 835 F. Supp. 1174, 1181-82 (N.D. Cal. 1993) (sanctioning *pro se* plaintiff under Rule 11 for filing complaint containing untrue factual allegations and material misrepresentations); *Balfour Guthrie, Inc. v. Hunter Marine Transport, Inc.*, 118 F.R.D. 66, 76 (M.D. Tenn. 1987) (sanctioning plaintiff and its counsel under Rule 11 for filing complaint after pre-filing investigation "disclosed facts that only exculpated" defendant). As the United States Court of Appeals for the Second Circuit has aptly noted, "[t]he creativity of an attorney may not transcend the facts of a given case; counsel in his attempts at creativity concocted 'facts' that were not well grounded, and therefore exceeded the bounds of conduct acceptable of members of the bar of this court as well as those incorporated in Fed. R. Civ. P. 11." *Levine v. FDIC*, 2 F.3d 476, 479 (2nd Cir. 1993).

Here, plaintiffs and their counsel have plainly violated Rule 11's dictates. While it appears that they conducted some investigation prior to filing the CAC, they apparently were displeased with the results of that investigation. To support the claims in their complaint, they manufactured statements attributed to Supervisor, SA 1, and SA 2 – statements that these individuals have sworn that they did not, and would not, make.

The conduct here is particularly problematic because the false attributions and false allegations go to the heart of – indeed, they are the basis for – plaintiffs' claims that the defendants issued false and misleading financial projections with the requisite scienter. For example, as noted above, Jones-Allen has sworn that she did not tell plaintiffs' consultant that her Spreadsheet made it "obvious" to defendants that Synopsys could not meet its Q3 04 and FY 2004 projections; to the contrary, according to Jones-Allen's sworn statement, the Spreadsheet indicated no such thing and, to her knowledge, everyone at the Company believed that it would meet its projections. Jones-Allen Decl. at ¶¶ 5, 9, 23, 35. Likewise, Carlson and Moreland have sworn that they did not tell plaintiffs' investigator that defendant Andrews artificially inflated sales projections, or that their supervisors complained about allegedly inflated projections; to the contrary, both have stated under penalty of perjury that projections were not artificially inflated and that they know of no such complaints. Carlson Decl. at ¶¶ 23-24; Moreland Decl. at ¶¶ 23,

-12-  C:\NrPortbl\PALIB1\SJR\2612902_1.DOC

26. Similarly, all three individuals have sworn that they did not tell plaintiffs' agent that customers began "flocking" to competitors in late 2003 due to frustration over shifting licensing arrangements, unbundling of licenses, indifference or inflexibility – or for any reason. Jones-Allen Decl. at ¶ 32; Carlson Decl. at ¶ at 19; Moreland Decl. at ¶ 20.

In sum, the inclusion of numerous false attributions and false allegations in the CAC plainly violates Rule 11.[10]

## II. SANCTIONS ARE WARRANTED TO DETER THE FILING OF COMPLAINTS BASED ON FALSE ATTRIBUTIONS AND FALSE ALLEGATIONS

Generally, upon finding a Rule 11 violation, this Court's decision whether to impose sanctions is discretionary. *See* Fed. R. Civ. P. 11(c) ("If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court *may* … impose an appropriate sanction…") (emphasis added). Congress, however, has clearly manifested its preference that sanctions be imposed whenever a Rule 11 violation is found in cases filed under the Securities Exchange Act of 1934. Under the PSLRA, upon final adjudication of a case, a court must determine whether Rule 11 was violated; if a violation is found, sanctions are mandatory. *See* 15 U.S.C. § 78u-4(c)(2).

Rule 11 permits the award of either non-monetary or monetary sanctions. Fed. R. Civ. P. 11(c)(2). Sanctions "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." *Id.*; *see also Truesdell*, 209 F.R.D. at 174.

As an appropriate sanction here, defendants respectfully seek the dismissal of the CAC with prejudice and without leave to amend. This sanction is necessary to deter similar conduct by plaintiffs, their counsel, and those similarly situated in other private securities litigation – an

---

[10] In addition to Rule 11, the conduct of plaintiffs and their counsel is sanctionable under this Court's "inherent authority." *See Mercury Service, Inc. v. Allied Bank of Texas*, 117 F.R.D. 147, 158 (C.D. Cal. 1987), *aff'd,* 907 F.2d 154 (9th Cir. 1990) ("Sanctioning . . . counsel for the filing of false or seriously misleading [pleadings] is appropriate under [a court's] inherent powers . . . to maintain the authority and dignity of the Court."). Sanctions may also be imposed against plaintiffs' counsel under 28 U.S.C. § 1927, as counsel's bad faith attributions of statements in the CAC unreasonably and vexatiously prolonged this litigation. *See*, *e.g.*, *In re Akros Installations, Inc.*, 834 F.2d 1526, 1532 (9th Cir. 1987) (sanctions under § 1927 appropriate when counsel has acted recklessly or in bad faith); *Wang v. Gordon*, 715 F.2d 1187 (7th Cir. 1983) (amended complaint sanctionable under § 1927 if it wrongfully prolongs proceedings).

area particularly susceptible to abusive and frivolous filings.  A complaint based on wholly manufactured statements of purported sources is *precisely* the kind of abusive filing that parties and counsel should be strongly deterred from filing.  *See generally SG Cowen Sec. Corp. v. United States Dist. Ct. for the N. Dist. Cal.*, 189 F.3d 909, 911 (9th Cir. 1999) (observing that PSLRA was passed "in response to several perceived abuses in securities litigation"); H.R. CONF. REP. NO. 104-369, at 31 (Nov. 28, 1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (noting finding of "significant evidence of abuse in private securities lawsuits").

Rule 11 authorizes a wide variety of non-monetary sanctions.  *See* Fed. R. Civ. P. 11(c)(2) ("sanction may consist of, or include, directives of a nonmonetary nature").  Such sanctions include dismissal of a complaint.  *See Kramer v. Tribe*, 156 F.R.D. 96, 100-01, 111 (D.N.J. 1994) (noting that Rule 11 authorizes dismissal of action, and dismissing complaint pursuant to, *inter alia*, Rule 11), *aff'd*, 52 F.3d 315 (3d Cir. 1995); *Sun World, Inc. v. Lizarazu Olivarria*, 144 F.R.D. 384, 390 (E.D. Cal. 1992) (dismissing defendants' counterclaim under Rule 11); *see generally Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995) ("It is well settled that dismissal is warranted where . . . a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings:  'courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'"); *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) ("Dismissal is an appropriate sanction for falsifying a deposition.  Fed. R. Civ. P. 11, as well as the court's inherent powers, can be called upon to redress such mendacity.").

Moreover, dismissal of the CAC without leave to amend is appropriate here.  Plaintiffs had four months to investigate for and prepare their CAC.  They also had the benefit of reviewing an initial complaint filed by the same attorneys.  They nonetheless unearthed no valid factual allegations, and decided instead to proceed with wholly invented statements to support their claims.  Given the nature of the conduct at issue here, and given the need to deter this type of conduct in other Exchange Act cases, plaintiffs should not be permitted to proceed with this litigation.  *Cf. Greebel v. FTP Software, Inc.*, 182 F.R.D. 370, 376 (D. Mass. 1998), *aff'd*, 194

-14-

F.3d 185 (1st Cir. 1999) (dismissing certain securities fraud claims without leave to amend, despite plaintiffs' proffer of new allegations based on newly-obtained documents, where plaintiffs "would not have discovered the additional evidence but for the inclusion of" groundless claim in earlier complaint).

**CONCLUSION**

For the foregoing reasons, defendants respectfully move that plaintiffs, Schiffrin & Barroway, LLP, and Green Welling LLP be sanctioned for violating, at a minimum, Rule 11 of the Federal Rules of Civil Procedure.

Dated:  March 4, 2005                    WILSON SONSINI GOODRICH & ROSATI
                                         Professional Corporation


                                         By:      /s/ Boris Feldman
                                                  Boris Feldman

                                         650 Page Mill Road
                                         Palo Alto, California 94303-1050
                                         Telephone 650-493-9300
                                         Attorney for Defendants
                                         SYNOPSYS, INC., AART J. DE GEUS,
                                         STEVEN K. SHEVICK, and VICKI L.
                                         ANDREWS